UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSEPH M. O'QUINN,

      Petitioner,

v.                                      CASE NO. 6:09-cv-217-Orl-36GJK

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

_____

## <u>ORDER</u>

      Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted.  Thereafter, Respondents filed a response to the petition for writ of habeas corpus alleging the petition was untimely filed (Doc. No. 13).  The Court entered an order finding the petition was timely filed and ordered a response on the merits of Petitioner's claims (Doc. No. 25).  Respondents filed a supplemental response (Doc. No. 29), and Petitioner has filed a reply (Doc. No. 35).

      Petitioner alleges seven claims for relief in his habeas petition:  (1) & (2) trial counsel was ineffective for failing to prepare and argue a defense on his behalf and failed to properly pierce the rape shield statute; (3) trial counsel was ineffective for failing to object to, or ask for a curative instruction, regarding several instances of prosecutorial

misconduct; (4) trial counsel was ineffective for failing to file a pre-trial motion to have the victim examined by a psychological expert; (5) trial counsel was ineffective for failing to call two key defense witnesses; (6) a claim of cumulative error; and (7) trial counsel was ineffective for failing to secure a serology expert to testify at trial.

## I. *Procedural History*

Petitioner was charged with one count of capital sexual battery on a person less than twelve years of age. At trial, the victim, who was nine years old when the incident occurred, testified that she lived with her father and Petitioner (App. B at 90-91). On October 16, 2002, she was home with Petitioner when he asked her if she wanted to have sexual intercourse. *Id.* at 92. Petitioner then grabbed the victim's arm, pulled her into his bedroom, took off his clothes, and forced her to perform oral sex upon him. *Id.* at 94-5. The victim testified that Petitioner "peed" in her mouth, most of which got on her shirt. *Id.* at 95. The victim then went to the bathroom, washed out her mouth, showered, and changed her clothes. *Id.* The victim testified that she tried to call her father but could not reach him until the next morning. *Id.* at 96.

The victim's father Michael Frascella ("Frascella") testified that he had known Petitioner for three to four years and had met him on a construction job site where they both worked. *Id.* at 147-48. Petitioner began living with Frascella and his daughter approximately three weeks prior to the incident. *Id.* at 149. On October 16, 2002, Frascella had plans to go to a friend's birthday party, and he asked Petitioner if he could watch his daughter until Frascella's aunt came to the house. *Id.* at 150-51. Frascella did not come

home that night and instead stayed at his girlfriend's house. *Id.* at 152. The following

morning, he received a phone call from his daughter, after which he called the police. *Id.*

On cross-examination, Frascella testified that the week prior to the incident he had an

argument with Petitioner but never asked Petitioner to leave the home. *Id.* at 153.

Pablo Marquez-Cruz ("Marquez-Cruz"), a detective for the Orange County Sheriff's

Office, investigated the instant case. *Id.* at 163. Marquez-Cruz met with the victim on

October 17, 2002. *Id.* at 166. The victim was able to describe the incident, she understood

his questions, was coherent, and was consistent in terms of date, time, and place. *Id.* at 166-

67. After the victim began to describe in detail what happened, Marquez-Cruz contacted

the Child Protection Team ("CPT") and notified the Department of Children and Families

("DCF"). *Id.* at 168. Marquez-Cruz also instructed forensics to take pictures and collect

evidence, including the multi-colored shirt the victim had been wearing when the incident

occurred. *Id.* at 168. Marquez-Cruz conducted the victim's interview with the CPT and

later arrested Petitioner. *Id.* at 172-73. The detective testified that he read Petitioner his

*Miranda*[1] rights, after which Petitioner told police that he had masturbated in the bathroom

and used the victim's shirt to wipe semen off. *Id.* at 174. Marquez-Cruz took an oral swab

of Petitioner's saliva to use for DNA testing. *Id.* at 175.

Nurse practitioner Deborah Scott ("Scott") testified that she works for the CPT and

met with the victim on October 17, 2002. *Id.* at 205-08. Scott performed a medical

examination of the victim. *Id.* at 208. Scott testified that the victim had bruising on her left

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

tonsil.  *Id.* at 210.  The contusions appeared to be fresh because they were darkly colored.

*Id.* at 212-13.  At the time the victim was not suffering from a cold or allergies, and there

was nothing in the victim's history to suggest that the bruising occurred from something

other than a traumatic event.  *Id.* at 213. Scott opined the bruising occurred due to some

type of blunt penetration into the victim's oral cavity.  *Id.* at 214.  Scott also noted that the

victim showed her how the forced oral sex occurred and testified that her findings were

consistent with the victim's story.  *Id.*

Jason Werking ("Werking"), who works for the Florida Department of Law

Enforcement in the serology and DNA section, testified that he tested the shirt that the

police collected as evidence and found the existence of semen.  *Id.* at 289.  Werking

compared the DNA profile from the seminal fluid to Petitioner's DNA and concluded the

two profiles matched.  *Id.*  Petitioner testified at trial that the week prior to the incident he

had an argument with Frascella at work, after which  they had another confrontation at

home.  *Id.* at 322-23.  Frascella asked Petitioner to leave their home.  *Id.*  Petitioner testified

that the victim was present for this fight.  *Id.*   Petitioner then testified that he watched the

victim on October 16, 2002.  *Id.* at 324.  Petitioner told the jury that the following morning,

he showered and then masturbated over the toilet.  *Id.* at 327-28.  Petitioner used a shirt that

was lying on the toilet tank to clean himself when done and then placed the shirt back on

the tank.  *Id.* at 329.  Petitioner stated he never forced the victim to perform oral sex and

that the victim's testimony was a lie.  *Id.* at 338.

The jury convicted Petitioner as charged.  The trial court sentenced Petitioner to life

imprisonment. Petitioner appealed; while his appeal was pending with the Fifth District Court of Appeal, he filed a Rule 3.800(b)(2) motion to correct sentence pursuant to the Florida Rules of Criminal Procedure, which was denied. Appellate counsel then filed an *Anders*[2] brief and moved to withdraw from the case. The Fifth District Court of Appeal granted the motion to withdraw and *per curiam* affirmed.

Petitioner filed a Rule 3.800(a) motion to correct illegal sentence arguing he was entitled to additional days of credit for time served (App. T). The trial court granted the motion on May 10, 2005, and awarded Petitioner 398 days of credit for time served. Petitioner then filed a Rule 3.850 motion, alleging five grounds for relief. Petitioner also filed two addenda which raised additional grounds for relief. The state trial court summarily denied the Rule 3.850 motion. Petitioner appealed, and the Fifth District Court of Appeal affirmed *per curiam*.

Finally, Petitioner filed a second Rule 3.800(a) motion to correct illegal sentence, raising the same claims that he raised in his first Rule 3.800(a) motion. The state court rejected the merits of the motion, finding Petitioner's claims had already been raised, considered, and previously granted. The appellate court affirmed *per curiam* the lower court's denial of Petitioner's claims. The instant federal habeas petition follows.

## II. *Legal Standards*

### A. *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

---

[2] *Anders v. California*, 386 U.S. 738 (1967).

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See Brown v. Patton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Calliper*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (internal quotations and citation omitted); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134;

*Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

### B.     Standard for Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. *Newland*, 527 F.3d at 1184. In *Strickland*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3] *Strickland*, 466 U.S. at 687-88; *see also Bobby Van Hook*, 130 S. Ct. 13, 16 (2009). A habeas court's review of a claim under the *Strickland* standard is "doubly

---

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

deferential." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (April 4, 2011) (quoting *Knowles v. Mirzayanze*, 129 S. Ct. 1411, 1420 (2009)(citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." *Bobby Van Hook*, 130 S. Ct. at 17 (internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006), *cert. denied sub nom. Jones v. Allen*, 127 S. Ct. 619 (2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. *Id.* A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir.), *cert. denied sub nom. Ladd v. Burton*, 493 U.S. 842 (1989); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

### III.    Analysis

#### A.    Claims One and Two

Petitioner alleges in his first two claims that trial counsel rendered ineffective assistance by failing to present a defense at trial. Specifically, Petitioner contends that trial counsel planned to present evidence of the victim's prior sexual knowledge to support a defense that the victim fabricated the charges, however, counsel failed to properly argue the issue to the state trial court (Doc. No. 1 at 12). In support of these claims, Petitioner notes that during the discussion with the State and the trial judge, counsel was unprepared because she left the relevant case law in her office. *Id.* Moreover, Petitioner states that trial counsel failed to properly present evidence that the victim had made similar accusations against another person in the past. *Id.* at 16-17; 20.

Petitioner raised these claims in his Rule 3.850 motion for post-conviction relief (App V). The state trial court denied these claims, finding that trial counsel did not act deficiently in failing to present evidence about the victim's prior sexual knowledge because the victim testified that she did not know about sex and thus, this evidence was inadmissible (App. Z at 3). Moreover, the state court found that the evidence relating to the victim's alleged prior false accusations would not have been admissible at trial because defense counsel could not prove that the victim's prior accusations were false. *Id.* at 4. Finally, the court concluded that even if counsel acted deficiently in failing to present these defenses, Petitioner could not establish prejudice because there was no reasonable probability that this evidence would have resulted in a different outcome at trial in light

of the fact that Petitioner's DNA was found on the victim's shirt. *Id.* The Fifth District Court of Appeal affirmed *per curiam* (App. DD).

Section 794.022(3), Florida Statutes, states "[n]otwithstanding any other provision of law, reputation evidence relating to a victim's prior sexual conduct . . . shall not be admitted into evidence in a prosecution under [this section] . . . ." In Florida, a victim's prior knowledge of sexual acts or their sexual activity with a third person is irrelevant unless it is used to show that someone other than the defendant committed the crime. *See Esteban v. State*, 967 So. 2d 1095, 1098 (Fla. 4th DCA 2007). However, Florida courts have allowed defendants to introduce evidence at trial regarding a sexual battery victim's prior sexual history in order to prove that a victim fabricated her testimony. *See Lewis v. State*, 591 So. 2d 922 (Fla. 1991); *Dixon v. State*, 605 So. 2d 960, (Fla. 2d DCA 1992) (allowing evidence that a child victim had engaged in sexual play with her brother only weeks before the alleged sexual battery to support the defendant's claim that the child victim fabricated the story). To the extent that Petitioner was attempting to introduce the victim's prior sexual history to show that she fabricated her allegations, this evidence was likely admissible.

Nevertheless, trial counsel did attempt to question the victim regarding her prior sexual experience. During trial, defense counsel requested that she be allowed to question the victim regarding her prior sexual experience (App. C at 117). The State objected to this line of questioning. *Id.* Defense counsel argued that the victim admitted to engaging in oral sex with a boy her own age at school in the past. *Id.* at 119. Defense counsel stated

10

that this evidence could prove that the victim had knowledge of oral sex and used that knowledge to fabricate her allegations against Petitioner. *Id.* Defense counsel did not have copies of the case law or the statute to provide to the trial judge on this issue, therefore, the state court sustained the prosecutor's objections. *Id.* at 120-31. The state court then allowed the defense to proffer the victim's testimony regarding her prior knowledge of oral sex. The victim testified that she had never performed oral sex before this incident. *Id.* at 134. Defense counsel attempted to impeach the victim with her prior statement to police, however, the trial court would not allow the questions because the transcript of the police interview had not been authenticated. *Id.* at 138-43. Petitioner argued in his initial pro se brief that the trial court erred in preventing defense counsel from questioning the victim regarding her sexual history (App. M at 18). The Fifth District Court of Appeal *per curiam* affirmed.

Petitioner has not demonstrated that trial counsel acted deficiently in this case because counsel did attempt to get evidence of the victim's prior sexual knowledge introduced at trial. Even if defense counsel's actions in failing to cite to case law or failing to properly impeach the victim with her prior statement amount to deficient performance, there is no indication that these deficiencies resulted in prejudice. Petitioner has not established that there is a reasonable probability that had the jury heard evidence that the victim gave a prior statement that she performed oral sex upon a boy her own age, that the jury would have acquitted Petitioner. This evidence of the victim's prior sexual experience would not explain the fact that Petitioner's DNA was found on the victim's shirt and that

the victim had bruising on her left tonsil. As such, this portion of grounds one and two is denied.

Furthermore, to the extent Petitioner alleges the victim made prior false accusations of sexual battery, this evidence was not admissible at trial. In *Pantoja v. State*, 59 So. 3d 1092, 1097-98 (Fla. 2011), the Supreme Court of Florida held a victim's prior false accusation of illicit sexual conduct was not admissible at trial. The Florida Court noted that even though the victim's prior accusations against her uncle of inappropriate touching did not result in charges against the uncle, there was no indication that the victim lied. *Id.* at 1097. The Court stated that "[a]n investigation into the allegation against [the victim's] uncle was never conducted and her uncle was never punished for the alleged conduct. It does not logically follow that the victim would have motive to lie about sexual abuse because her prior allegation went unacknowledged." *Id.*

Similar to *Pantoja*, although the victim in this case made prior accusations against another person, stating that he had sexually abused her, the fact that the allegation of sexual abuse did not result in the filing of charges against that person does not prove that the victim lied about those prior accusations. In fact, the record indicates that while charges were not brought against the person who allegedly perpetrated the abuse at the victim's school, this person was fired due to several similar complaints made by other students (App. X, Exhibit B; App. Z). Thus, there is no indication the victim's allegations were false merely because the accused was not prosecuted. To the extent that Petitioner alleges that the victim made a second prior false accusation that was not prosecuted, again

Petitioner has not demonstrated that the victim's accusation was false, only that the State did not prosecute this other alleged instance of sexual battery. Trial counsel did not act in a deficient manner with respect to this portion of claims one and two because the proffered evidence that the victim in this case previously accused others of similar actions was not admissible at trial.

Petitioner has not shown that the state court's denial of these claims was contrary to, or resulted in an unreasonable application of, clearly established federal law. Accordingly, claims one and two are denied pursuant to §2254(d).

### B.    *Claim Three*

In his third claim Petitioner alleges that trial counsel was ineffective for failing to object to, or ask for a curative instruction regarding, several instances of prosecutorial misconduct. Petitioner contends that the prosecutor improperly argued that he was guilty, improperly bolstered the victim's credibility, improperly appealed to the juror's emotions, and made inflammatory comments regarding the evidence. Petitioner raised this claim in his Rule 3.850 motion (App. U at 32). The state trial court summarily denied this claim, finding that none of the prosecutor's comments were improper, therefore defense counsel's failure to object did not result in prejudice (App. Z at 6-8). The Fifth District Court of Appeal affirmed *per curiam* (App. DD).

Claims based on the statements of a prosecutor are assessed using a two-prong analysis: first, the court must determine whether the comments at issue were improper, and second, whether any comment found to be improper was so prejudicial as to render

the entire trial fundamentally unfair.  *Davis v. Kemp*, 829 F.2d 1522, 1526 (11th Cir. 1987).

A trial is rendered fundamentally unfair if "there is a reasonable probability that, but for

the prosecutor's offending remarks, the outcome . . . would have been different . . . . [A]

reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Williams v. Kemp*, 846 F.2d 1276, 1283 (11th Cir. 1988) (citations and quotations omitted); *see*

*also Drake v. Kemp*, 762 F.2d 1449, 1458 (11th Cir. 1985).

In alleging that the prosecutor improperly vouched for the victim's credibility and

voiced his opinion on Petitioner's guilt, Petitioner points to the following comments:

> On October 16, 2002, . . . [the victim's] life changed forever.  That was the day
> that she was left alone with this man.  That was the night that he took her
> into his bedroom, took off his clothes, shoved his penis into her mouth
> repeatedly until he ejaculated, forcing her to spit it up.  Her life changed that
> day.
>
> . . .
>
> She gagged.  She gagged all over her shirt.
>
> . . .
>
> As I was saying, you'd have to believe in the conspiracy theory in order to
> buy into the defense's argument.
>
> The father doesn't know whether or not the note was written on the night of
> the 16th or the 17th.  There is a discrepancy about what time dinner was.
> There was a discrepancy about what time he left to go out to his party.  So
> what?  There is no disagreement that these two people were left alone on the
> night of the 16th.  There's no disagreement that his semen was found on her
> shirt.  Don't fall for it.
>
> If you're thinking about what time dinner was, you're not thinking about
> him asking . . . [the victim] about sex.  If you're thinking about when the
> father knew when notes were written, you're not thinking about him
> jamming his penis in her mouth.  If you're thinking about bedtimes, you're

not thinking about him ejaculating in her mouth.  Don't fall for it.  All of it is extraneous, and all of it in the end is not relevant.  Don't get swayed by it.

(App. C at 358-63).

Petitioner has not demonstrated that any of the above comments were improper.  The prosecutor did not improperly vouch for the victim or try to bolster her credibility, nor did the prosecutor make any improper comments about Petitioner's guilt.  The prosecutor argued, based on the testimony presented at trial, that the jury should find the victim's testimony credible and should not focus on facts irrelevant to the charged crime.  Petitioner has not shown that the comments improperly appealed to the juror's emotions or that they were in some way derogatory or inflammatory.  The State's discussion of the facts it believed it had established, while unpleasant, was not impermissible.

Petitioner also argues that the following comments made by the prosecutor were improper:

Is there a reasonable doubt in this case?  I would submit to you that there is not.

You don't leave your common sense at the door when you serve as a juror.  Common sense.  If he's telling you the truth, . . . [the victim] lied.  It's that simple.  Did she lie? I submit to you that she did not.

. . .

His semen was found on her shirt.  He has given you an explanation.  Is it reasonable? Is it enough of an explanation to create a reasonable doubt in your mind? Ladies and gentlemen, I don't believe it has [sic].

. . .

Now, I ask you to return a verdict of guilty to the main charge of sexual

battery upon a person less than 12 years of age, and I ask you to do that because the state has proven that he has done it beyond a reasonable doubt, and that is the only fair verdict that can be returned in this case.

*Id.* at 368-70.

"Attempts to bolster a witness by vouching for his credibility are normally improper and constitute error." *United States v. Newton*, 44 F.3d 913, 921 (11th Cir. 1995) (citations omitted). Courts have found it improper for the "prosecution to place the prestige of the Government behind a witness by making explicit personal assurances of the witness' veracity." *Id.* (citations omitted). The record supports the state court's findings that the above comments were not improper. While attempts to bolster a witness are improper, in this case the prosecutor was making reasonable inferences from the testimony and evidence presented at trial. The prosecutor's suggestion that the victim was not lying was a proper inference that could be made because the victim's story was corroborated by DNA evidence. If the jury was to acquit Petitioner, it would have to find that the victim's testimony was not credible, or in effect, find that she was lying. Furthermore, there is no indication that the prosecutor's comments, if improper, had a substantial or injurious effect on the jury. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *United States v. Thompson*, 422 F.3d 1285, 1297 (11th Cir. 2005) (stating a prosecutor's comments must be improper and prejudicially affect the substantial rights of a defendant).

Likewise, Petitioner has not demonstrated that the State improperly opined that he was guilty. The Supreme Court of the United States has stated that the expression of a prosecutor's personal opinion concerning the guilt of the accused "can convey the

impression that evidence not presented to the jury, but known to the prosecutor, supports the charges." *United States v. Young*, 470 U.S. 1, 18-9 (1985); *see also Parker v. Allen*, 565 F.3d 1258, 1273-74 (11th Cir. 2009). The Court also stated that a prosecutor's opinion "carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its view of the evidence." *Young*, 470 U.S. at 18-9.

However, in the instant case, the prosecutor's statements did not contain any suggestion that he was relying on information that was outside of the evidence presented at trial. The prosecutor supported his statements that he believed Petitioner was guilty and that Petitioner's version of the events was not credible by referring to testimony and evidence presented at trial. Petitioner has not demonstrated that the prosecutor's comments, even if impermissible, had a substantial and injurious effect on the jury because Petitioner's DNA was found on the victim's shirt. *Brecht*, 507 U.S. at 638; *Thompson*, 422 F.3d at 1297.

As Petitioner has not demonstrated that the state court's determination of this claim was contrary to, or an unreasonable application of, federal law, this claim is denied pursuant to § 2254(d).

### C.    *Claim Four*

In his fourth claim Petitioner alleges that trial counsel was ineffective for failing to file a pre-trial motion to have the victim examined by a psychological expert. Petitioner contends that prior assessments of the victim indicate the following: (1) when she was four years old she may have been the victim of sexual abuse, (2) her mother used crack cocaine

and alcohol while pregnant with the victim, and (3) the victim was diagnosed with bipolar disorder and attention deficit hyperactivity disorder.

Petitioner raised this claim in his addendum to his Rule 3.850 motion for post-conviction relief (App. W at 36). The state trial court summarily denied this claim, stating the following:

> Defendant alleges counsel failed to file a pre-trial motion for a psychological evaluation of the victim. He notes that the defense theory was that the victim fabricated her story after she saw Defendant and her father engage in an altercation, which led her to want to get Defendant out of the house and be alone with her father. He alleges that counsel obtained records from the Department of Children and Families, which indicated that the victim had undergone psychological examinations and had been placed in special classes, attended schools for emotionally handicapped children, and was heavily medicated. He also cites various medical reports and letters describing the victim's mental and emotional problems.

> Defendant cites various cases for the proposition that a trial court has the discretion to order psychological examinations under certain conditions, to assess the credibility, veracity, and mental competency of a victim. However, he does not state a factually sufficient challenge to the victim's mental competency, and this Court concludes that there is insufficient indicia of the victim's lack of truthfulness to justify a challenge to her credibility and veracity by requiring a psychological examination.

(App. Z at 10-11) (footnote omitted). The Fifth District Court of Appeal affirmed *per curiam* (App. DD).

In Florida, a trial court has inherent power to order a psychological evaluation of the victim of a crime. *Camejo v. State*, 660 So. 2d 242, 243 (Fla. 1995). However, "[t]he mere fact that a witness is retarded or may have a history of mental problems is . . . not enough to compel . . . [a psychological] evaluation." *Simmons v. State*, 683 So. 2d 1101, 1105 (Fla. 1st

DCA 1996). "In the absence of any statutory or rule authority for compelling the victim to submit to any type of test or examination, and the lack of any evidence whatsoever to support a compelling need for the intrusion," a court may not order testing to be performed on a victim. *State v. Brewster*, 601 So. 2d 1289, 1291 (Fla. 5th DCA 1992).

Petitioner has not demonstrated that he is entitled to relief on this claim. Trial counsel did not have a basis to ask the state court for psychological testing of the victim. The mere fact that the victim was diagnosed with ADHD and bipolar disorder is not sufficient to compel a psychological evaluation. There is no indication that the victim was incompetent to testify in this case. The victim's testimony indicates that she was aware of her surroundings, understood the significance of the proceedings, understood the difference between telling a lie and telling the truth, and that she gave appropriate responses and testimony during trial (App. C at 85-143). Because the victim's testimony was coherent and appropriate, the victim's prior evaluations and placement in special classes at school, being medicated for bipolar disorder and ADHD, and having behavioral problems and problems interacting with children her own age do not amount to compelling or extreme circumstances which would establish the need for a psychological evaluation. *See Jones v. Crosby*, No. 8:02-cv-226-T-27EAJ, 2006 WL 890003, at *9-10 (M.D. Fla. Mar. 31, 2006) (finding that a psychological evaluation of the victim was not warranted because nothing in the record indicated that the victim's behavior was irrational where the victim was aware of her surroundings and her testimony was coherent, relevant, and appropriate despite her history of mental illness). Petitioner has not shown that trial

counsel acted deficiently in failing to request a psychological evaluation or that had counsel requested an examination, it would have been granted.

The Court finds the state court's determination of this claim was not contrary to, or an unreasonable application of, federal law.  Accordingly, claim four is denied pursuant to § 2254(d).

### D.      Claim Five

In his fifth claim, Petitioner alleges that trial counsel was ineffective for failing to call two key defense witnesses.  Specifically, Petitioner argues that trial counsel failed to call Linda and Jim Sowka as defense character witnesses at trial.  Petitioner states that these witnesses would have testified that he was a law abiding citizen who held a job and was a productive member of society.  Petitioner raised this claim in his addendum to his Rule 3.850 motion for post-conviction relief (App. W at 61).  The state trial court summarily denied the claim, stating that pursuant to Florida law Petitioner could not have used the Sowkas' testimony to support his own credibility (App. Z at 12).  Moreover, the court noted that even if Petitioner could have introduced evidence of his good character, he would have opened the door to specific challenges to his good character.  *Id.*  Finally, the court stated that evidence of good character did not, as a matter of law, raise a reasonable doubt as to Petitioner's guilt.  *Id.*   The Fifth District Court of Appeal affirmed *per curiam* (App. DD).

"[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply

20

state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted); *Wright v. Secretary, Dep't of Corr.*, No. 6:08-cv-618-Orl-35DAB, 2009 WL 5176558, at *3 (M.D. Fla. Dec. 23, 2009). Petitioner's speculative claim that counsel should have called Linda and Jim Sowka to testify at trial about his good character fails because Petitioner has not presented affidavits from these witnesses stating that they would have testified in this manner. Therefore, Petitioner has not made the requisite factual showing, and his self-serving speculation will not sustain a claim of ineffective assistance of counsel.

Additionally, Petitioner has not demonstrated that counsel's failure to call these witnesses to testify at trial resulted in prejudice. In Florida, an accused can attempt to demonstrate his non-violent character by introducing evidence of his reputation for being peaceful and law-abiding. Fla. Stat. §§ 90.404(1)(a); § 90.405(1); *see also A.K. v. State*, 898 So. 2d 1112, 116-17 (Fla. 4th DCA 2005); *Wrobel v. State*, 410 So. 2d 950, 951 (Fla. 5th DCA 1982). However, when an accused places his character at issue, the State is then permitted to offer evidence to rebut his assertions. *A.K.*, 898 So. 2d at 116-17. There is no indication that had the Sawkas testified at trial that Petitioner had a reputation for being peaceful and law-abiding, that Petitioner would have been acquitted. These witnesses were not alibi witnesses who would have testified that Petitioner could not have committed the crime. Nor could these witnesses account for how Petitioner's DNA was left on the victim's shirt or how the victim was bruised on her left tonsil.

Petitioner has not met his burden of proving that the state court's denial of this claim was contrary to, or an unreasonable application of, federal law. Accordingly, this claim is denied pursuant to § 2254(d).

### E.     *Claim Six*

In his sixth claim Petitioner raises a claim of cumulative error. The Court must "consider the cumulative effect of . . . [the alleged errors] and determine whether, after viewing the trial as a whole, [Petitioner] received a fair trial as is . . . due under our Constitution." *Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004). The Court has considered the cumulative effect of Petitioner's claims of error and finds that he cannot demonstrate cumulative error sufficient to entitle him to federal habeas relief.

### F.     *Claim Seven*

In his seventh and final claim Petitioner alleges that trial counsel was ineffective for failing to secure a serology expert to testify at trial. Petitioner contends that an expert was necessary to testify regarding whether the victim's DNA was also present on the shirt. Petitioner essentially contends that because it was alleged that the victim was forced to perform oral sex and that some of his seminal fluid fell from her mouth onto her shirt as she spit or vomited, that her DNA should have been present as well.

Petitioner raised this claim in his second addendum to his motion for post-conviction relief (App. X at 14). The state trial court summarily denied the instant claim, finding that even if an expert had been secured and could testify that the victim's DNA was not on the shirt, that there was not a reasonable probability that he would have been

acquitted (App. Z at 14). The Fifth District Court of Appeal affirmed *per curiam* (App. DD).

Petitioner has not demonstrated that he is entitled to relief on this claim. Although Petitioner contends that the victim "vomited" onto her shirt, the victim testified at trial that Petitioner put his penis in her mouth and pushed her head back and forth. *Id.* at 95. The victim stated that Petitioner then "peed" in her mouth, and most of this liquid fell on her shirt. *Id.* Therefore, Petitioner has not demonstrated that trial counsel acted deficiently in failing to secure a defense expert because there is no indication that the victim's DNA from her saliva would be present on her shirt because she did not testify that she vomited. Furthermore, the lack of the victim's DNA would not necessarily result in an acquittal or support Petitioner's version of events. As the Court noted previously, Scott testified that the victim had bruising on her left tonsil which was consistent with some blunt force penetrating her oral cavity. The state court's determination of this claim was not contrary to, or an unreasonable application of, federal law. Accordingly, claim seven is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.    *Certificate of Appealability*

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of

a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Petitioner has not made the requisite showing in these circumstances. The Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Joseph M. O'Quinn (Doc. No. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of the Court shall enter judgment accordingly.

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 7th day of March, 2012.

Charlene Edwards Honeywell
Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-3 3/7
Counsel of Record
Joseph M. O'Quinn